# WHEELING.

## Hix v. Hix.

Submitted January 15, 1885.—Decided March 28, 1885.

1. The Court will take judicial notice of the fact, that Greenbrier county was all the time during the war within the Confederate lines, and that Confederate money was the general currency in circulation there. (p. 484.)

2. When an administrator residing where Confederate notes were the general currency during the war receives and pays out such notes, while he is indebted to the estate, in settling his accounts he should be charged and credited with the full amount of such notes received and paid out without scaling them. (p. 485.)

3 Where an administrator during the war collected an ante-war debt due the estate by solvent parties and did not pay it out, when he might have done so, he is chargeable for the full amount of such debt and is not entitled to have it scaled. (p. 485.)

4. Where in the *ex parte* settlement of an administrator's accounts a balance is found against him and included in the settlement as the proceeds of an ante-war bond on solvent parties, which he collected during the war and did not pay out when he might have done so, and such amount is equal to or greater than such balance so found against him, he is liable for the full amount of such balance and is not entitled to have it scaled. (p. 485.)

5. Where a suit is brought by distributees against an administrator for a balance found against him due to the estate, and the bill contains allegations and charges which show he is liable for such balance, and in his answer he does not controvert such material charges, the court does not err in decreeing against him for such balance on the bill and answer without referring the case to a commissioner to have an account taken. (p. 484.)

6. Where a defendant served with a subpœna in a chancery suit fails to demur or answer, and a decree is rendered on bill taken for confessed, and the defendant does not under the statute move to have the decree reversed in the court below but appeals, such appeal will be dismissed as improvidently granted. (p. 486.)

The facts of the case apear in the opinion of the Court.

*J. W. Davis* and *R. F. Dennis* for appellants.

*A. F. Mathews* for appellees.

JOHNSON, PRESIDENT:

In April, 1882, the plaintiffs filed their bill against the defendants in the circuit court of Greenbrier, to compel John Hix, administrator of Michael Hix deceased, to pay to them as. the distributees of said Michael Hix the sum of $585.34 with interest from March 15, 1864, the amount found due upon an *ex parte* settlement of said John·Hix before a commissioner of the then recorder of Greenbrier county made in 1867, which settlement was duly recorded. The said *ex parte* settlement is exhibited and relied on in the bill. The bill further alleges, that the said administrator filed with said commissioner a certificate issued to him in his own name and not as administrator by a depository of the Confederate States for $700.00, dated March 29, 1864, which, he claims, represents the funds. of said estate invested by him, and claims credit therefor; but said commissioner did not allow said credit. The plaintiffs charge, that said administrator·is not entitled to credit for said certificate; that the money claimed to be represented by it was a $600.00 bond on Smith and the defendant Hutchinson, an ante-war debt; that the said Hutchinson was then and still is solvent; that the administrator however claims, that said Hutchinson compelled him to receive payment of said debt in Confederate money by duress, fraud and misrepresentation; that, if this is true, both said Hutchinson and said administrator are liable for sufficient to cover said balance due them; that plaintiffs and said administrator lived in the same vicinity during the war, and there was no necessity for his collecting said debt and investing in said certificate, if he did so, but plaintiffs deny that any part of the money so invested belonged to said estate, or that any funds of said estate were in Confederate money. The bill prays a decree against said administrator *de bonis propriis* or against said Hix and Hutchinson for said amount and interest; and that all proper accounts may be directed and taken, and for general relief.

As to the certificate of $700.00, the commissioner in his settlement says: " The administrator has filed a certificate of the Confederate States for $700.00 invested. This certificate is in his own name, but he assures your commissioner that the money belonged to the estate, and your commissioner is of opinion that such is the fact, or at least all that appears to be due from the administrator to the estate is in the certificate, which together with his commissions and the fees unpaid and charged to the estate amount to nearly that amount. The administrator appears to have done the best he could under the laws then in force. Whether he is to be allowed for this certificate is not however for your commissioner to decide."

On April 20, 1882, Hutchinson answered the bill, and in his answer denies that the bond was paid by said respondent to said Hix as claimed by him, and avers that no fraud, duress or misrepresentation was used.

John Hix demurred to the bill, which was not noticed in the decree but was overruled thereby; it is not insisted on here, and the bill appears to be sufficient. He also answerd the bill. In his answer he demurs to the bill, and for answer denies that he ever received the $600.00 bond; that the settlement shows that he owes $585.34; that said *ex parte* settlement is binding on him; says that at the time the settlement was made the officials and courts misunderstood the law; that as they then interpreted the law Confederate money could not be scaled; and the commissioner in the said settlement charged this defendant with the property at Confederate prices; that he never got one cent in good and lawful money for all the property of the decedent; that he sold the property for Confederate money and got his pay in Confederate money which was valueless according to the turn affairs have taken; and prays for a proper settlement by a commissioner.

| | |
|---|---:|
| The account shows that he is charged with the proceeds of the sale bill.............. ................................ .. | $ 571.38 |
| With proceeds of bond on Smith and Hutchinson, principal and interest.....:.. .................. .......................... | 808.00 |
| Proceeds of another bond................................... ......... | 10.88 |
| Another......................................... . .... .... | 7.66 |
| And still another . .... .. ...... ... .... ...... .. .. ... | 4.08 |
| Making............... ..... ...................... ..... . .... ... | $ 1,402.01 |
| All of which he disbursed, except a balance against him of | $ 585.34 |

The bill was taken for confessed as to all the defendants except Foster, whose answer does not relate to matters affecting the plaintiff, nor, so far as the decree goes, the defendant, Hix, and the defendants, Hix and Hutchinson, on whose answers with general replications thereto and on the bill taken for confessed as to the other defendants the cause was heard. The court held that the defendant, Hix, was liable for said balance of $585.34 with interest, which with the principal amounted to $1,227.28, for which the decree is entered against said Hix, and divides the amount among the distributees, as each is entitled, amounting to $204.63 each and ordered that execution might issue thereon.

From this decree John Hix appealed.

The first error assigned is, that the court failed to refer the cause to a commissioner, both sides having asked that it be so referred. We see no necessity under the state of the pleadings to send the cause to a commissioner. True, the defendant denies ever having the bond of Smith and Hutchinson for $600.00, but it was charged to him in the account, and he had acquiesced in that account for fifteen years. The settlement was *prima facie correct*; and the material charge in the bill, that said bond was improperly collected, that it was collected when not necessary, and under such circumstances, as to make the administrator responsible therefor in good money, is not controverted in the answer and must therefore be taken as true. Neither is the fact alleged, that the investment of $700.00 in a Confederate certificate was the money of the estate, controverted in the answer, and it must be taken as true. Taking these two important facts as true : that he was not justified under the circumstances in collecting the $600.00 bond in Confederate money and not paying it out, and that no money of the estate was invested in a Confederate certificate, it was unnecessary to refer the cause to a commissioner.

The main question was : Should the $600.00 bond have been collected in Confederate money, and not paid out? If it was properly done under the circumstances, then the court taking judicial notice, that Greenbrier county was within the Confederate lines during the war, and that Confederate money was the currency in the county, (*Simmons* v. *Trumbo*,

9 W. Va, 358; *Kent & Co.* v. *Depew*, 18 W. Va. 500),
the balance should have been scaled. But if the $600.00
bond was collected under such circumstances that the admin-
istrator must be held for its value in good money, and the
amount being greater than the balance found due, it should
not have been scaled; and the decree is right.

The bill alleges, that it was an ante-war debt, and that
Hutchinson was then and still is solvent; that there was
no necessity for collecting the debt; that the plaintiffs and
administrator lived in the same vicinity. According to these
uncontroverted facts, he was responsible for the proceeds of
said bond in good money, unless the proceeds of the bond
were needed to pay the debts of the estate and were actually
used for that purpose. (*Carter* v. *Dulany*, 30 Grat. 192;
*Douglas* v. *Stephenson*, 75 Va. 747; *Hoke* v. *Hoke*, 12 W. Va.
479.) Where an administrator resided during the war in a
region in which Confederate notes were the general currency,
received and paid out such notes, while he was indebted to
the estate, in settling his accounts he should be charged and
credited with the full amount of such sums received and paid,
without scaling them. (*Estell* v. *McClintick*, 11 W. Va.
399.) If the defendant had put the matter of his justifica-
tion in collecting the bond and investing the proceeds in
Confederate money in issue, he should have taken proof, and
then, if he was not ready, he should have asked for a con-
tinuance. He had no right to rely upon the plaintiff's ask-
ing that the case should go to a commissioner. He should
have been ready; at least he should have put the matters
relied on by him in issue by controverting the charges
of improper conduct. Besides he has no right to com-
plain; he did not in court make any motion to have the
cause referred to a commissioner. We see no error in the de-
cree of July 10, 1882, and it is affirmed.

After this decree was entered, a supplemental bill was filed,
alleging that executions had gone out on the said decree and
had been returned "no property found;" and that said John
Hix had fraudulently conveyed away all his land to defraud
his creditors; that the largest tract had been fraudulently
conveyed to Enos Richman, and shortly thereafter without
consideration and carrying out the same fraudulent intent

the said Richman conveyed it to Sarah Hix, the wife of said John Hix. The said bill prayed, that said deeds might be held fraudulent as to the plaintiff's debts, and that the lands be subjected to the payment thereof. Sarah Hix did not appear in the suit. She neither demurred nor answered. Sarah Hix made no motion in the court below to have the said decree reversed, but appealed therefrom to this Court. She not having demurred to nor answered the bill, the appeal is dismissed as improvidently granted.

DISMISSED.